## THE J. M. GRIFFITH.

### BRADLEY et al. v. THE J. M. GRIFFITH.

(District Court, S. D. California. December 2, 1895.)

SEAMEN'S WAGES—DESERTION—DEVIATION.

A voyage was described in the shipping articles as "from the port of San Francisco to Port Hadlock, Washington, and thence to San Francisco for final discharge, either direct or via one or more ports of the Pacific coast." *Held*, that this meant that the vessel might proceed from Port Hadlock to San Francisco directly, or might stop at one or more intermediate ports; but that to pass by San Francisco to San Pedro, and, after discharging there, return to Port Hadlock, before going to San Francisco, was a deviation; and it was, consequently, not a desertion, warranting forfeiture of wages, for members of the crew to leave the vessel at San Pedro without the master's consent.

This was a libel in rem by John Bradley and others against the barkentine J. M. Griffith to recover seamen's wages.

Goodrich & Garrison, for libelants.

Wells & Lee and C. Edgerton, for defendants.

WELLBORN, District Judge.    The libelants are seamen, and have sued for wages claimed to be due them, respectively, for services as members of the crew of the barkentine J. M. Griffith.    The voyage for ·which they engaged was, by the shipping articles, not to exceed six calendar months, and is particularly described in said articles as follows, to wit: "From the port of San Francisco to Port Hadlock, and thence to San Francisco for final discharge, either direct or via one or more ports of the Pacific coast."    The facts material to this opinion are undisputed, and as follows, to wit: Three of the libelants —Bradley, Anderson, and Francis—signed the agreement above indicated on the 25th of March, 1895, at San Francisco, Cal., and the others—Bill and Lyunggren—on the 9th and 22d days of April, 1895, respectively, and at Port Hadlock, Wash.    Said agreement, besides describing the voyage, contains, among others, this provision:

"And it is herein expressly agreed, without reservation of any sort, that in case of the desertion from the vessel of any of the crew the said persons so deserting shall forfeit to the owners of the said vessel all the wages due them."

And also the following provision:

"It is expressly understood that these shipping articles shall be construed to be a civil contract between the master of the vessel and the members of the crew, and that the essence of the contract is the undertaking of each member of the crew to complete the specified voyage before becoming entitled to any portion of his pay."

On or about the 28th day of March, 1895, the vessel sailed from San Francisco to Port Hadlock, and from thence to the port of San Pedro, in the state of California, arriving at said last-named port about the 7th day of May, 1895.    The vessel's cargo was discharged at said port of San Pedro, and thereafter, on the 15th day of May, 1895, the libelants, without the consent of the master of said vessel, abandoned said vessel, when the same was ready and about to sail for Port Hadlock.    The libelants contend that by going to San Pedro the vessel deviated from the course of the voyage designated in the shipping articles, and, further, that the voyage so designated did not include a return or second voyage to Port Hadlock, and that this deviation and proposed return to Port Hadlock were such breaches of the shipping articles, by the master of the vessel, as justified libelants in leaving the same at San Pedro; and therefore they are entitled to recover their wages, up to the time they left, at the rate specified in said articles.    Defendant insists that the libelants, by abandoning the vessel at San Pedro, under the circumstances named, were guilty of desertion, and therefore forfeited their wages.

The first question to be determined involves the interpretation of the contract; that is, whether or not the voyage therein described included the port of San Pedro, and a return thence, or second voyage, to Port Hadlock.    If it did not, the libelants are entitled to recover, for by going to San Pedro, and proposing a return thence to Port Hadlock, the master of the vessel violated his contract with the libelants, and they had a right to leave the vessel.    If, however, the voyage included San Pedro and a return to Port Hadlock, there arises the further question, what sort of proof is essential to establish the fact of desertion, and was such proof adduced on this trial?    Recur-

ring to the question first above indicated, it will be observed that San Francisco, by the terms of the contract, was the port of final discharge, and the vessel was to go there from Port Hadlock, either directly or by one or more ports of the Pacific coast. Did the words, "via one or more ports of the Pacific coast," authorize the vessel to sail by San Francisco, to a port not intermediate between Port Hadlock and San Francisco, but several hundred miles to the south of the latter port, and then return, or make a second voyage, to Port Hadlock? Among the authorities cited to this point in the briefs of the respective parties there are two which seem to me determinative of the question. In Anon., Fed. Cas. No. 449, the voyage was described as follows: "From the port of Baltimore to the port of Curacoa, and elsewhere," etc. In construing this phraseology, the court used the following language:

"The voyage from Baltimore to Curacoa is therefore a specified voyage, the labor and hazard of which is known to all parties; and for that voyage the agreement is such as the statute requires. But the terms 'and elsewhere' are added to this specification of voyage, and it is insisted by the respondent's counsel that under these words he was authorized not only to invert the order of voyage specified in the articles, but to go to any other port,—as to St. Domingo. If this construction was sound, the provisions of the act of congress which require a specification of the voyage when the hiring of seamen is not for a given time become a dead letter, because there would be no terminus ad quem, which is essentially necessary to the legal sense of the term 'voyage.' The terms 'and elsewhere' must therefore be construed as subordinate to the voyage specified, and can only authorize the pursuing such a course as may be necessary to accomplish the principal voyage, or, in other words, to import no more than the law would imply as incidental to the main contract. All arguments which rested on the defendant's right to construe these articles as giving him the alternative of several ports must fail, of course. Indeed, there is nothing in the words of the contract which, independently of the ground before taken, would warrant, by rules of law or grammatical construction, such an interpretation. The term 'and' is properly conjunctive, and is never construed to be disjunctive, unless when coupled with a manifest intent, apparent upon the writing itself, that it was used in such sense and for such purposes by the parties. The only intent manifested upon the face of the articles before the court is such as is fairly to be understood by the words 'from Baltimore to Curacoa and elsewhere'; and it would be doing very great violence to these words to invert the order of ports, for, if the respondent is once exempt from the necessity of proceeding to Curacoa,—the specified voyage,—there is nothing which would restrain his entering upon the most remote and perilous voyage the adventurous and enterprising spirit of commerce could suggest."

The principle of the above case has been adopted and applied by Justice Story in a case where the voyage was described thus: "From Boston to the Pacific, Indian, and Chinese Oceans, or elsewhere, on a trading voyage, and from thence back to Boston." In this last case, it was held (quoting from the syllabus):

"That the outward voyage terminated at Canton, and that the shipping articles did not authorize a return from Canton to the northwest coast; and that, therefore, it was not a desertion in a mariner to leave the ship at Canton, it being the intention of the ship to return to that coast."

This case is strikingly in point, as further shown by the following facts, which I quote from the statement accompanying the opinion of the court:

"In fact, the ship was bound on a trading voyage to the northwest coast for furs. The ship sailed from Boston in January, 1806, went around Cape

Horn to California, thence to the Sandwich Islands, and thence to the Russian settlements on the northwest coast of America. A cargo was there taken on board on freight for Canton, with which the ship afterwards safely arrived at that port, in the month of February or March, 1807. Previous to the sailing for Canton, the master had determined, after unloading his freighted cargo at that port, to return with his original cargo to the northwest coast for trade, and from thence to go again to Canton, before his return to the United States; and this determination was well known to the crew. The libelant, having this knowledge, declared his intention not to return to the coast, and accordingly, at Canton, some time between the 1st and 10th day of March, 1807, and before the freighted cargo was unladen, he secretly left the ship, without a discharge, and against the will of the master. This supposed desertion was immediately afterwards inserted in the logbook by the proper officer, and an ineffectual search was made to find him, and compel him to complete the voyage. The ship, still having on board the principal part of her outward cargo, again returned to the northwest coast, and in September, 1807, was wrecked at a place called Oonalaski, and wholly lost."

The language of Justice Story was as follows: .

"And I am satisfied that by the true construction of these articles the outward voyage terminated on the first arrival at Canton, and did not include an intermediate voyage to the coast and back again. The act of congress (July 20, 1790; 1 Stat. 131, § 1) for the regulation of seamen in the merchants' service requires that the voyage or term of service should be specified in the shipping articles. It would be an utter evasion of the statute to allow such an indefinite expression as 'elsewhere' to control or extend the meaning of the other certain description of the voyage, or to constitute, of itself, a sufficient description. I hold, with the learned Mr. Justice Winchester (1 Hall Law J. 209, Fed. Cas. No. 449), that the term 'voyage' is a technical phrase, and always imports a definite commencement and end; and that the term 'elsewhere' must be construed either as void for uncertainty, or as subordinate to the principal voyage stated in the preceding words. And if there be any doubt as to these words, that doubt is not to be enlarged so as to cover any intermediate voyage back from the Chinese to the Indian and Pacific Oceans. It is analogous to the case of several ports mentioned in a policy of insurance, where it has been held that the party must avail himself of the ports in the order in which they stand in the policy, and cannot recur back from the last to any former port." Brown v. Jones, 2 Gall. 478, Fed. Cas. No. 2,017.

Applying to the case at bar the principle of the two decisions above mentioned, I cannot do otherwise than hold that the words, "direct or via one or more ports of the Pacific coast," embrace only such ports as are intermediate between Port Hadlock and San Francisco. If the words, "direct or via one or more ports of the Pacific coast," authorized the vessel to sail by San Francisco to San Pedro, and then return to Port Hadlock, there is no reason why it could not have gone to the extreme southern port of South America, or even from Port Hadlock to the extreme northern port of said coast. Such a construction would be manifestly against the intention of the parties as shown in the contract, and cannot prevail. I think the language above quoted, fairly interpreted, means that the vessel might proceed from Port Hadlock to San Francisco, either immediately—that is, without intervening delays—or might stop at one or more intermediate or way ports. This conclusion renders it unnecessary for me to pass upon any of the other questions submitted by the parties in their respective briefs. Judgment will be entered for the libelants.